J-S09001-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| SURESH PACKIRISAMY | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| BANUPRIYA SURESH | : | No. 1858 EDA 2020 |

Appeal from the Order Entered September 24, 2020
In the Court of Common Pleas of Lehigh County Civil Division at No(s):
No. 2015-FC-1443

| | | |
|---|---|---|
| SURESH PACKIRISAMY | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | No. 1859 EDA 2020 |
| BANUPRIYA SURESH | | |

Appeal from the Order Entered September 16, 2020
In the Court of Common Pleas of Lehigh County Civil Division at No(s):
No. 2015-FC-1443

| | | |
|---|---|---|
| SURESH PACKIRISAMY | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BANUPRIYA SURESH | : | No. 1886 EDA 2020 |

J-S09001-21

Appeal from the Order Entered September 16, 2020In the Court of Common Pleas of Lehigh County Civil Division at No(s): No. 2015-FC-1443

BEFORE: OLSON, J., McCAFFERY, J., and MUSMANNO, J.

MEMORANDUM BY OLSON, J.:                                    **FILED AUGUST 20, 2021**

Appellant, Suresh Packirisamy, the biological father, ("Father") appeals from the September 16, 2020 Final Custody Order ("the Final Custody Order"), which, *inter alia*, granted Banupriya Suresh, the biological mother, ("Mother") sole legal custody and primary physical custody of S.H.S., a child, born December 2005, and S.S., a child, born October 2007 (collectively, "the children"). [1,2] We affirm.

_____

[1] The Pennsylvania Rules of Appellate Procedure provide that, "[i]n an appeal of a custody action where the trial court has used the full name of the parties in the caption, upon application of a party and for cause shown, an appellate court may exercise its discretion to use the initials of the parties in the caption based upon the sensitive nature of the facts included in the case record and the best interest of the child." Pa.R.A.P. 904(b)(2); **see also** Pa.R.A.P. 907 (stating that, "[w]hen an appeal is filed in a custody action, upon application of a party and for cause shown[,] the appellate court may make a determination that using the parties' initials in the caption is appropriate after considering the sensitive nature of the facts included in the case record and the child's best interest"). These changes to our Rules were approved on October 22, 2020, and became effective January 1, 2021, after the current appeal was filed. Neither party has applied to this Court for the use of initials in the caption. The caption has been corrected accordingly to reflect the full names of the parties as they stood upon the trial court record at the time the appeal was taken. Pa.R.A.P. 904(b)(1) (stating, "[t]he parties shall be stated in the caption as they appeared on the record of the trial court at the time the appeal was taken"). We will, however, refer to the minor children involved in this custody dispute by their initials in order to protect their identities.

[2] Father filed numerous appeals of the Final Custody Order, challenging in each appeal **a portion** of the Final Custody Order. ***See Packirisamy v.***

- 2 -

_____

***Suresh*** at 1886 EDA 2020, 1887 EDA 2020, 1888 EDA 2020, and 1889 EDA 2020. This Court previously dismissed Father's appeals filed at 1887 EDA 2020, 1888 EDA 2020, and 1889 EDA 2020, and directed Father to address all issues raised in those three dismissed appeals at the appeal pending at 1886 EDA 2020. *Per Curiam* Order, 11/17/20, at 1887 EDA 2020; ***see also*** *Per Curiam* Order, 11/17/20, at 1888 EDA 2020; *Per Curiam* Order, 11/17/20, at 1889 EDA 2020.

Father also filed an appeal of a separate September 16, 2020 order directing the Family Court Office for Lehigh County, Pennsylvania to release S.H.S.'s expired Republic of India passport and renewed Republic of India passport to Mother. ***See Packirisamy v. Suresh*** at 1858 EDA 2020; ***see also*** Trial Court Order, 9/16/20. Additionally, Father appealed a September 24, 2020 order directing the Lehigh County Clerk of Judicial Records to release S.H.S.'s expired Republic of India passport and S.S.'s two expired United States of America passports to Mother." ***See Packirisamy v. Suresh*** at 1859 EDA 2020; ***see also*** Trial Court Order, 9/24/20.

In a November 17, 2020 *per curiam* order, this Court consolidated Father's three appeals (1858 EDA 2020, 1859 EDA 2020, and 1886 EDA 2020) *sua sponte*. However, our subsequent review of the record reveals that the appeals filed at 1858 EDA 2020 and 1859 EDA 2020 are from ancillary orders implementing the Final Custody Order and are not, themselves, appealable final custody orders. This Court has long-held that, "a custody order will be considered final and appealable only if it is both: 1) entered after the [trial] court has completed its hearings on the merits; and 2) intended by the [trial] court to constitute a complete resolution of the custody claims pending between the parties." ***G.B. v. M.M.B.***, 670 A.2d 714, 720 (Pa. Super. 1996). Here, the trial court entered the Final Custody Order upon conclusion of the custody hearings and intended that order to resolve completely all the then-outstanding custody claims between the parties. ***See*** Final Custody Order, 9/16/20, 1, 6 (listing the pending matters resolved therein and stating that the Final Custody Order superseded all prior custody orders). Therefore, the Final Custody Order was a final, appealable custody order. ***G.B.***, 670 A.2d at 720. Within the Final Custody Order, the trial court directed that "Mother may take any and all necessary steps to obtain, maintain, and possess the [c]hildren's passports and travel documents." Final Custody Order, 9/16/20, at 2-3. In order to effectuate its objective that Mother "obtain, maintain, and possess" the children's passports, the trial court entered the aforementioned two ancillary orders directing the release of the passports then-currently possessed by the Family Court Office for Lehigh County and the Lehigh County

The trial court summarized the pertinent factual history as follows:[3]

> The parties were married on March 20, 2005[, in the Republic of] India, their native country. Father is [currently] unemployed. Mother is [currently] engaged in [software testing] since October 2019. Father left the marital residence in the summer of 2014. On October 26, 2015, Father filed a complaint in divorce with a count for equitable distribution, alimony, [] alimony p*endente lite*, counsel fees[,] and costs. At that time, Father averred that he was residing at the United States Post Office [in] Allentown, [Pennsylvania]. To date, Mother has remained in the marital residence [in Lehigh County, Pennsylvania]. The [trial court] docket reflects that Father's mail has repeatedly been returned to the [trial] court as "undeliverable." []Father [subsequently

---

Clerk of Judicial Records. These two subsequent ancillary orders did not involve reconsideration of the underlying custody matter but, rather, were necessary orders to implement the objective of the Final Custody Order regarding possession of the passports. Therefore, these two ancillary orders are not final, appealable custody orders. **G.B.**, 670 A.2d at 720; **see also Kassam v. Kassam**, 811 A.2d 1023, 1026 (Pa. Super. 2002).

As such, we dismiss Father's appeals at 1858 EDA 2020 and 1859 EDA 2020. We will consider the issues raised in these two now-dismissed appeals within the context of Father's challenge to the Final Custody Order at 1886 EDA 2020.

We further note that this Court previously quashed Father's appeals at 1885 EDA 2020 and 1890 EDA 2020 because, *inter alia*, the orders in question did not present a justiciable case or controversy invoking appellate jurisdiction. *Per Curiam Order*, 11/17/20, at 1885 EDA 2020; **see also** *Per Curiam Order*, 11/17/20, at 1890 EDA 2020 (stating, the appeal was also quashed because the notice of appeal was filed more than 30 days after the order in question).

[3] To quote the trial court, "This has been a long and contentious dissolution of a marriage and family involving a tortured procedural history due to multiple family, civil, and criminal court actions and various interlocutory appeals and petty behavior on the part of both parties." Trial Court Opinion, 5/24/18, at 9.

- 4 -

changed his address with the trial court] from [the physical street address of the United States Post Office in Allentown, Pennsylvania] to [a post office box located within the United States Post Office in Allentown, Pennsylvania].

[On] January 29, 2016, Mother filed a related claim for custody, seeking sole legal and physical custody of the two [children]. On April 15, 2016, at a custody conference, the parties agreed to share legal custody of the children, with Mother having primary physical custody and Father having partial physical custody. Footnote 3 of that agreed-to [custody] order provided that[,] "Father is currently living and working in Virginia. Father is traveling from Virginia to Pennsylvania to pick the children up on alternating weekends." Father's custody [of the children] was to occur on alternating weekends, Friday evening until Sunday evening[,] provided that he had given Mother advance notice of his itinerary including an address and telephone number where he [would] exercise his custodial weekend. Additionally, Father was to provide Mother with advance notice if he did not intend to exercise his [custodial] weekend[.] The parties agreed to meet at [a restaurant establishment] in Allentown for the custody exchange.

The parties continued to litigate divorce[-]related issues[,] as well as [the terms of] custody. A custody trial was held March 8, 2018[,] and a [then-]final custody order was entered on March 15, 2018[,] by agreement. [This custody order] provided for shared legal custody, with Mother having primary physical custody and Father having partial physical custody.

. . .

On July 10, 2018, Mother filed a petition for modification of [the March 15, 2018] custody order[.] Mother established that due to Father's inconsistent pattern of [exercising his custodial time with the children] and given the extracurricular activities of the children, modification of the alternating weekend schedule[,] as well as the four weeks of vacation allotted to each parent, [was] in the children's best interests.

[]Mother [had] legitimate concerns regarding Father's transiency, lack of a steady residence, and inconsistent exercise of [custodial] time. []Father has not had a significant role as a parent. The [trial court] record from April 20, 2018[,] through early September[] 2018[,] demonstrate[d] that Father exercised approximately 40% of his custodial time. The five months are

filled with repeated instances of Father[] cancelling his full custodial time and[,] instead, exercising [] one full weekend [of custodial time] monthly, [] one overnight [stay], or a day[-]visit. The TalkingParents [service⁴] records evidence[d] the difficulty associated with bi-weekly exchanges between Mother and Father. A few examples [were] demonstrative. The May 25, 2018 weekend concluded with Father calling the police on Mother and the children. Unbeknownst to the children, they left his custody with Father's keys. Instead of a simple call to Mother, Father summoned the police and created more drama for the family. In June 2018, Mother lost patience with Father's inconsistency and because he cancelled and then failed to provide proper notice, she denied him Father's Day visitation. The next weekend, Father was late to the custodial exchange[,] and Mother denied him a visit. Finally, Father's hotel records demonstrate[d] that he had overnight visits with the children during the weekends of March 9-11, 2018, April 4-6, 2018, April 20-23, 2018, July 3, 2018, July 14, 2018, August 24-26, 2018, and September 7-9, 2018. [T]he hotel receipts identif[ied] Father's address as that of the United States [P]ost [O]ffice building rather than Father's post office box.

From September 8, 2018[,] through early May 2019, a period of eight months, Father did not exercise any periods of custody with the children. Father ha[d] some health issues in September 2018[. B]eginning in October [2018,], after [receiving] notice of the mortgage foreclosure [pertaining to the marital residence[,] Father chose to cancel his custodial time with the children because he had no money[] and no home. Mother repeatedly reached out to Father, [] expressed concern for him, and inquired as to his living situation and his health. Mother offered to help[] and even offered to buy him a phone. Additionally, Mother, on multiple occasions, [pleaded] with Father to step up as a parent. In February 2019, she even offered to buy movie tickets for him [so he could] take the children to a movie. Father declined the offer and chose not to exercise his custodial time. [T]his lapse in

_____

⁴ We take judicial notice that TalkingParents is a web-based and cellular telephone mobile application that provides co-parenting communication services including, *inter alia*, accountable calling with recording features, secure messaging with unalterable records, and a shared calendar to manage custody schedules and appointments. **See** https://talkingparents.com/home (last visited July 27, 2021).

contact between Father and his [children] further eroded their relationship.

. . . On May 13, 2019, Father gave notice to Mother that []for the first time since October 2018[,] he intended to exercise his [custodial time] on May 29, 2019[.] Mother denied the visit, stating that it was not feasible. On July 13, 2019, Father told Mother that he had been at the [restaurant] exchange location on June 12[, 2019,] in anticipation of her bringing the children and provided a receipt as proof of his whereabouts. Mother responded that Father did not tell her that he was suddenly resuming visitation. The [trial] court [found] that [it was] unreasonable of Father to have expected Mother and [the children] to wait for Father every other Friday at [the restaurant exchange site] when Father was absent for so many months. The means by which Father attempted to resume visitation only demonstrate[d] how out of touch he was with the children's needs. Nevertheless, throughout the rest of the summer of 2019, some visitation resumed and there was civil contact and communication between Mother and Father, [which] demonstrate[d] some flexibility with respect to Father's visits. On three occasions, only [S.S.] visited with Father.

Meanwhile, the [trial] court proceedings continued, and on August 27, 2019, after a custody conference, [a] custody trial was scheduled to begin on September 6, 2019. On September 4, 2019, the parties mutually requested a continuance, which was granted, and the [custody] trial was rescheduled to October 15, 2019. On September 11, 2019, upon consideration of a [trial] court scheduling conflict, the October 15, 2019 [custody] trial was rescheduled to October 16, 2019. On October 2, 2019, Father submitted an unopposed application for [a] continuance. His request was granted[,] and the [custody] trial was rescheduled to December 6, 2019.

Significantly, from September 18, 2019[,] through Thanksgiving 2019, Father repeatedly told Mother that he was unable to exercise his custodial time because he did not have money or a home. Within ten days of the [start of the] custody trial, Father demanded to exercise [his custodial time] the weekend after Thanksgiving. Although the record [was] devoid of events necessitating police involvement, Father demanded that the custody exchange take place at [a] police station. He also told Mother [not] to [] call him and that future non-emergency calls from her would be reported to the police. Thereafter, in late

December 2019, Father refused to tell Mother prior to the custody exchange where he intended on stay[ing] with the children. He insisted that because the [custody] order did not require [disclosure of this information], he was not going to [provide the information.] The [trial] court [found] this to be unreasonably uncooperative. Mother reminded him that on a prior occasion[,] he considered sleeping in the car with the children. At [that] time[,] there was some discussion regarding Father's sub[-]lease of an apartment in Allentown, [Pennsylvania,] but he told Mother that he did not have a bed for the children[] and implied that he would come and get the beds from the marital residence as per [his] bankruptcy case. Ultimately, the parents acknowledged that the children only wanted a day[-]visit with Father[,] and on December 30, 2019, Father exercised a day[-]visit.

This late December [2019] exchange [was] further evidence of Father's housing instability. For many months [prior], Father [failed to provide] a verified local residence, and his periods of [overnight] partial physical custody [of] the children [had] been at various hotels. At the time of the July 2019 custody conference held on the pending petitions, Father resided in Niagara Falls, New York. However, since December 2019, Father's address has remained a mystery. On December 6, 2019, he offered [a post office box] as his address, but on December 26, 2019, he asserted that his address was [an apartment in Allentown, Pennsylvania.] Sometime thereafter, Father moved to a hotel. In March [] 2020, he moved to [] New Jersey[.] Father testified that when he [was] in[-]between residences, he stay[ed] at hotels. Mother [] previously expressed concern about the children's safety and supervision at hotels. The children [] told her that they were left unattended in the hotel rooms and general areas [of the hotels] and that conditions [at the hotels] were not clean.

[On] day three of the custody trial [(July 16, 2020)], Father testified [*via* video communication] from an outdoor porch. When the [trial] court asked Father for his address, he stammered, hesitated, paused, and then, looked over at the street signs. Father could not, without assistance, state his address. After [the custody hearing concluded], Father submitted [] exhibits, which purportedly confirm[ed] his address[. The exhibits] consist[ed] of a picture of [an apartment complex] sign, a curbside picture of the [apartment complex] management office, a picture of a couch, and a picture presumably of an apartment door from the inside of an apartment. [If,] in fact[,] Father reside[d] in New Jersey, the proximity of the residences of the parties [was] 90 minutes apart.

Beyond this, Mother has been the primary caretaker [of the children] for the past six years. She [] performed nearly all [] the parental duties on behalf of the children. Father, by his own conduct, [] had minimal involvement. Mother [] maintained a loving, stable, consistent[,] and nurturing relationship with the children[, which was] adequate for their respective emotional needs. She [] attended to the daily physical, emotional, developmental, educational, and special needs of each child. Moreover, both children excel[led] in [school, which] they have attended since elementary school. They each have taken musical instruction for years. The need for stability and continuity in the children's education, family life, and community life weigh[ed] in favor of Mother. The [children] are two years apart in age and have a close sibling relationship. Neither parent has any other children. Mother is available to care for the children and make[s] appropriate child-care arrangements.

Neither Mother nor Father have family who reside in the United States. There have been periods of time when maternal aunt and maternal grandmother have visited Mother and the children for extended periods of time. Father filed an eviction action against maternal grandmother, [when] she [stayed] in the marital residence [during a previous visit]. The children communicate regularly with Mother's family in [the Republic of] India *via* advanced communication technology. There was no evidence submitted that the children have contact with Father's family.

In recent months, conversation between Mother and Father has degenerated. There [was] occasional name[-]calling and short-tempered remarks. Immediately after the February 7, 2020 incident (discussed below), Father placed a hold on Mother's mail. Mother was forced to file a petition with the [trial] court to release her mail and the children's mail. [On] April [7,] 2020, the [trial] court entered an order [in] an attempt to resolve the dispute[. H]owever, [] in June [2020,] Mother requested that Father release her mail.

There are competing petitions related to Father's contact with the children. Mother asserts that Father has not exercised his [custodial time] and[,] subsequently, Father asserts that Mother has interfered and has not brought the children to the custody exchange [location] per the [trial] court order. The record demonstrates that Mother consistently made the children available throughout 2018, 2019[,] and into 2020. It was only after Father chose not to exercise his custodial time for a

- 9 -

substantial period of time without justification, that Mother began to allow the children to refuse visits [with Father].

The [trial] court interviewed the children. They are intelligent and talented[.] Each [child] verbally expressed concern for their Father and fear of his temper. Father's aggressive behavior is evidenced by the children's testimony, Mother's testimony, and prior [trial] court proceedings. In 2014[,] and 2015, multiple protection from abuse actions [were] filed between the parties. However, the children [were] not at risk of harm.

The real concern for the [trial] court in this case [was] the alienation of the children from their Father. Phone calls previously were directly between Father and the [children]. However, at some point in 2019, [the children] stopped responding to his calls and began to resist visits with him. While Mother [encouraged the children] to call [Father], she [left] the decision up to them. It is clear that, as a result of Father's inconsistent contact, his relationship with his [children was] strained.

[Based upon the trial court's] interview of the [children], while it is clear they love their Father, they do not feel comfortable with him, especially overnight. Overnight[] visits with Father have been at hotels. If Father [] had an apartment over the past two or three years, the children have not been there. The children remember visits with their Father where he was largely preoccupied with his work on a computer. The children have not had regular, consistent contact with Father for a substantial period of time. More recently, [on] February [7,] 2020, there was an event at the custody exchange [location] that resulted in tears, video, and the children's refusal to go with Father.

The [trial] court has been assigned to this family for years. Father's vindictiveness has not abated despite the lapse of time, his health issues, his financial circumstances, or the COVID-19 [global] pandemic. He [] demonstrated to the [trial] court that he [was] unable[] to co-parent with Mother. Father has not been available in any substantial way to participate in and share legal custody, [and] he has conducted himself contrary to the best interests of the children.

The children are alienated from their Father, not as a result of Mother's action[] but[,] rather[,] as a result of Father's conscious choice not to exercise substantial periods of [custodial time]. He has not actively participated in the children's lives. Despite this, the [children] have excelled at school and in their extracurricular

- 10 -

activities. While it is clear that they love their Father, the children are no longer comfortable in his care, especially for an overnight visit at a hotel. The [trial] court can only hope that consistent day[-]visits on alternating weekends will provide Father with the opportunity to heal and rebuild the relationship that he once had with his [children]. Time is of the essence for Father to let go of his contempt for Mother and focus on the remaining years of his [children's] adolescence.

Trial Court Opinion, 9/16/20, at 8-17 (record citations, footnotes, and extraneous capitalization omitted).

On September 16, 2020, the trial court entered the Final Custody Order, which, *inter alia*, denied Father's February 18, 2020 petition requesting that Mother be found in contempt of a prior custody order regarding visitation, and granted Mother sole legal custody and primary physical custody of the children. Trial Court Order, 9/16/20, at §§ 1, 4, and 5.[5] The Final Custody Order directed Mother to "take any and all necessary steps to obtain, maintain, and possess the [c]hildren's passports and travel documents" but prohibited Mother from traveling internationally with the children without first obtaining Father's consent or the trial court's approval. *Id.* at § 4. This appeal followed.[6]

Father raises the following issues for our review:

[1.] Did the trial court commit an abuse of discretion and error[] of law [when] the [trial] court failed to conduct an evidentiary hearing on [Father's] contempt petition[s] filed

---

[5] The Final Custody Order stated that it superseded all prior custody orders and was effective immediately.

[6] Both Father and the trial court complied with Pa.R.A.P. 1925.

- 11 -

[April 4, 2018, and] February 18, 2020, [as well as Mother's contempt petition filed May 2, 2019,] and further violated [Father's] procedural due process rights by not providing notice?[7]

[2.] Did the trial court commit an abuse of discretion and error[] of law[ that violated Father's] procedural due process rights by not providing an opportunity [for Father] to be heard and notice [regarding Mother's possession of the children's passports?8]

[3.] Did the trial court commit an abuse of discretion and error[] of law when it interpret[]ed and appl[ied] Pa.R.C[iv].P. 1915.4 and **Dietrich v. Dietrich,** 923 A.2d 461 (Pa. Super. 2007), and refused to dismiss [Mother's] custody modification petition?

[4.] Did the trial court commit an abuse of discretion and error[] of law by modifying physical and legal custody [as an improper sanction] for [the] adjudication of [Mother's] petition for contempt filed May [2], 2019[,] without considering the best interest[s] of the children?

[5.] Did the trial court commit an abuse of discretion and error[] of law [when] the [trial] court did not provide [Father] an opportunity[,] with [] notice[, to be heard on the issue of the motion] for the children's in-camera interview[s] and [when the trial court granted Mother] sole legal custody and [the] exclusive right to obtain, maintain, [and] possess the children's travel documents[,] including [the] children's passports[, without notice and in violation of Father's] procedural due process rights?

_____

[7] For purpose of ease of disposition, Father's single issue raised at 1886 EDA 2020 (Father's Brief at 4 ¶7), his single issue raised at 1888 EDA 2020 (Father's Brief at 4 ¶8), and his two issues raised at 1889 EDA 2020 (Father's Brief at 4-5 ¶¶9 and 10) have been consolidated.

[8] This issue encompasses both issues raised by Father in his now-dismissed appeals docketed in this Court at 1858 EDA 2020 and 1859 EDA 2020. Father's Brief at 5 ¶¶11 and 12.

[6.] Did the trial court commit an abuse of discretion and error[] of law in its [procedure] for the children's in-camera interview[s] and further violated Pa.R.C[iv].P. 1915.11(b)?

[7.] Did the trial court commit an abuse of discretion and error[] of law in setting forth an order that is contrary to a proper consideration of the evidence of record as applied to the custody factors set forth in 23 Pa.C.S.A. § 5328(a)?

[8.] Did the trial court commit an abuse of discretion and error[] of law when it failed to recuse from [the] custody action and its related claims [when the trial court] has been acting in violation of the law[ and has shown] a partial[] biased against [Father]?

[9.] Did the trial court commit an abuse of discretion and error[] of law in the contempt determination [when] the [trial] court failed to consider various facts, evidence, and testimony?

Father's Brief at 2-5 (extraneous capitalization omitted).[9]

In his first issue, Father challenges the trial court's order denying his April 4, 2018 petition to find Mother in contempt of the June 27, 2017 custody order,[10] his February 18, 2020 petition to find Mother in contempt of the March 15, 2018 custody order,[11] and the trial court's granting of Mother's May 2, 2019 petition to find Father in contempt of the March 15, 2018 custody

_____

[9] Father's brief was filed by his now-counsel of record, Joshua L. Thomas, Esquire. Mother, who represents herself, *pro se*, did not file a brief.

[10] Father alleges that Mother violated the June 27, 2017 custody order by taking the children to Disney World in Florida without first obtaining Father's agreement to the trip. Father's Petition for Contempt, 4/4/18, at ¶7.

[11] Father contends Mother violated the March 15, 2018 custody order on multiple occasions by, *inter alia*, failing to bring the children to the custody exchange location, failing to notify Father about medical appointments and school activities, and discussing legal issues in front of the children. Father's Petition for Contempt, 2/18/20, at ¶5.

order,[12] on the grounds that the trial court failed to conduct an evidentiary hearing and violated his due process rights by not providing notice of a contempt hearing.  Father's Brief at 65-73.

In reviewing orders denying, or granting, petitions of contempt, this Court is

> limited to determining whether the trial court committed a clear abuse of discretion.  Moreover, much reliance is given to the discretion of the trial [court].  Accordingly, we are confined to a determination of whether the facts support the trial court's decision.  Also[,] in civil contempt proceedings[,] the complaining party has the burden of proving by a preponderance of the evidence that a party violated a court order.

*Chrysczanavicz v. Chrysczanavicz*, 796 A.2d 366, 368-369 (Pa. Super. 2002) (citations, quotation marks, and original brackets omitted).  "[T]he five elements deemed essential to a civil contempt adjudication are: (1) a rule to show cause why attachment should issue; (2) an answer and hearing; (3) a rule absolute; (4) a hearing on the contempt citation; and (5) an adjudication."  *Id.* at 369 (citation and original quotation marks omitted).  These five elements protect both the party against whom the allegations of contempt are lodged, as well as the complaining party, so that both parties have an opportunity to be heard.  *Id.*  "Fulfillment of all five factors is not mandated, however.  The essential due process requisites for a finding of civil

---

[12] Mother asserts that Father violated the March 15, 2018 custody order by "not visit[ing] the children since Oct[ober] 2018."  Mother's Petition for Contempt, 5/2/19, at ¶5.

contempt are notice and an opportunity to be heard.'' ***Harcar v. Harcar***, 982 A.2d 1230, 1235 (Pa. Super. 2009) (citations, original quotation marks, and original brackets omitted).

Here, Father contends that the trial court failed to provide him notice of an evidentiary hearing on his petitions for contempt, as well as Mother's petition for contempt, and refused to conduct a hearing on the matters at which time Father could present his argument. Father's Brief at 66. In denying Father's petitions for contempt and granting Mother's petition for contempt, the trial court stated,

> On April 4, 2018, Father filed his petition for [] contempt [of] the custody order, dated June 27, 2017[.] Father alleged that Mother traveled to Disney World [in Florida] on [] March 23, 2018[,] in violation of paragraph 16 of the June 27, 2017 [custody] order. Paragraph 16 of the June 27, 2017 [custody] order solely addressed relocation of the residence of the children. There is no evidence to suggest that Mother attempted to relocate the children to Florida in violation of paragraph 16 of the [custody] order.
>
> . . .
>
> Related to Father's absence, Mother[,] on May 2, 2019, [] filed a petition for contempt, in which she asserts that Father has not visited the children since October 2018. Mother's petition is granted and Father is adjudicated in contempt. Shortly after Mother filed her petition, Father's pattern of behavior abruptly changed. On May 13, 2019, Father gave notice to Mother that []for the first time since October 2018[,] he intended to exercise his [custodial time] on May 29, 2019[.] Mother denied the visit, stating that it was not feasible. On July 13, 2019, Father told Mother that he had been at the [restaurant] exchange location on June 12[, 2019,] in anticipation of her bringing the children and provided a receipt as proof of his whereabouts. Mother responded that Father did not tell her that he was suddenly resuming visitation. The [trial] court [found] that [it was] unreasonable of

Father to have expected Mother and [the children] to wait for Father every other Friday at [the restaurant exchange site] when Father was absent for so many months. The means by which Father attempted to resume visitation only demonstrate[d] how out of touch he was with the children's needs. Nevertheless, throughout the rest of the summer of 2019, some visitation resumed and there was civil contact and communication between Mother and Father, [which] demonstrate[d] some flexibility with respect to Father's visits. On three occasions, only [S.S.] visited with Father.

. . .

On February 18, 2020, Father filed a petition for contempt of a custody order and alleged that Mother willfully disobeyed the March 15, 2018 [custody] order by failing to bring the children for visits with him on June 15, 2018[,] June 30, 2018[,] June 28, 2019[,] July 12, 2019[,] November 29, 2019[,] and January 10, 2020[,] and by failing to unlock her car doors [during a custodial exchange] on February 7, 2020. Father also alleged that Mother would bring only one child to the [custodial] visit, failed to return calls for the children, failed to notify him of dental and medical appointments, school conferences[,] and child[-]care issues, failed to provide him with [a] copy of the [children's] green card[s], and refus[ed] to discuss custodial issues with the children.

Regarding June 15, 2018, Mother did not provide the children to Father because he notified her that he would be picking them up on June 16, 2018. Regarding the June 30, 2018 custodial visit[,] Father timely advised Mother[, on June 27, 2018,] that he was only exercising custody on Saturday night[,] June 30, 2018. The pick-up time was 10:00 [a.m.] Mother appeared and waited until 10:04 [a.m.] and Father had not shown up. Father texted Mother to say that he was running late[] and would be there at 1:00 [p.m.] While the [custody] order provides [that] the parties should be flexible, Mother was not required to make the children available three hours after the [custodial] exchange time. On June 28, 2019, Father appeared for the custod[ial] exchange at [the restaurant exchange site] and texted Mother at 6:16 [p.m.] However, there [was] no communication regarding the exchange in TalkingParents. Similarly, on July 12, 2019[,] Father appeared at [the restaurant exchange site] without providing advanced notice to Mother.

Father showed up unexpectedly [for custodial exchanges] after having consistently missed his custodial time for the preceding eight to nine months. It [was] unreasonable for Father to expect Mother to bring the children to [the restaurant exchange site] as per [the custody] order every alternating Friday, when Father's pattern of behavior demonstrate[d] that he [chose] not to exercise his custodial time. It [would be] detrimental to the best interests of the children to wait at a custody exchange [site] twice a month only to have their Father never show up. While the [custody] order require[d] Mother to bring the children to the [custodial] exchange [site], and [did] not require[] Father to provide prior notice to Mother, eight or nine months [] passed where Father failed to exercise his custodial time. Mother's non-appearance [was] not contemptuous given Father's conduct and pattern of behavior.

On November 29, 2019, there was an argument at the [custody] exchange [site,] which ultimately resulted in Mother leaving with the children. On January 9, 2020, the day before the scheduled January 10, 2020 custodial exchange, Father advised Mother that he wanted to exercise his custodial time. However, Mother responded that the children [were] not willing to go and that they ha[d] homework. Mother indicated that the children [were] growing more resistant to visiting their Father. Father did not respond to Mother's statements regarding the children's resistance[] but[,] rather[,] appeared at [the restaurant exchange site]. Mother and the children did not appear. Just a few days later, Mother and the children suggested that they resume contact between Father and [the children] with a dinner visit, but Father rejected the offer and scolded Mother for having a "habit of not following the custody order." Finally, on February 7, 2020, Mother and Father both appeared for the custodial exchange [site]. The children were resistant and did not want to get out of their Mother's car. Father physically grabbed [S.S.] The [trial] court viewed a recording of part of the incident. There was crying and yelling. A passerby appeared to be concerned about what was happening. Ultimately, Mother locked her car [doors] and would not release the children to Father. Father appeared frustrated, angry, and aggressive.

Trial Court Opinion, 9/16/20, at 10, 12, 20-21 (record citations and extraneous capitalization omitted).

A review of the record demonstrates that the trial court conducted a hearing on, *inter alia*, Father's petitions for contempt, Mother's petition for contempt, and Mother's petition for modification of the March 15, 2018 custody order on December 6, 2019, December 26, 2019,[13] and July 16, 2020.[14]  After the trial court conducted the December 2019 custody hearings, Father filed his February 18, 2020 petition for contempt alleging that Mother violated the March 15, 2018 custody order.  Father received notice that his petition for contempt was to be considered by the trial court at the next custody hearing.  **See** Trial Court Order, 2/20/20; **see also** Trial Court Order, 3/16/20; Trial Court Order, 4/7/20; Trial Court Order, 4/24/20; Trial Court Order, 6/3/20.[15]  From the outset of the custody hearings, Father was aware that the purpose of the custody hearings, in part, was to address his April 4, 2018 petition for contempt and Mother's May 2, 2019 petition for contempt.

_____

[13] The trial court's various orders scheduling the December 2019 custody hearings stated that the purpose of the hearings was for consideration of Father's petition for contempt filed on April 4, 2018, and his October 30, 2019 emergency motion to grant relief in the divorce proceeding.  The hearings were also held to address Mother's petition for modification of the March 15, 2018 custody order and two petitions for contempt.  **See** Trial Court Order, 11/20/19; **see also** Trial Court Order, 12/11/19.

[14] The trial court order scheduling the July 16, 2020 custody hearing stated that the purpose of the hearing, in addition to the items considered at the December [2019] custody hearings, was to consider Father's February 18, 2020 petition for contempt of a prior custody order.  Trial Court Order, 6/3/20.

[15] The third session of the custody hearing was rescheduled multiple times due to the COVID-19 global pandemic and the closure of, *inter alia*, the Court of Common Pleas of Lehigh County.

*See* N.T., 12/6/19, at 4 (reiterating that the purpose of the custody hearing, in part, was to consider Mother's May 2, 2019 petition for contempt); *see also id.* at 47 (indicating that all outstanding matters, including Father's April 4, 2018 petition for contempt, will be addressed as part of the custody hearings). A review of the July 16, 2020 custody hearing transcript demonstrates that Father had ample opportunity to present his argument and evidence in support of his contempt petitions, as well as defend against Mother's contempt petition. *See, e.g.,* N.T., 7/16/20, at 23-68. Furthermore, Father had the opportunity to question Mother about details pertaining to the contempt petitions. *See, e.g.,* N.T., 12/26/19, at 37-45. The trial court provided Father with notice that the trial court would address his April 4, 2018 petition for contempt, as well as Mother's May 2, 2019 petition for contempt at all three of the custody hearings and further provided notice that the trial court would consider his February 18, 2020 petition for contempt at the July 16, 2020 custody hearing. At all three hearings, Father had the opportunity to be heard and to present evidence in support thereof, as well as question Mother. Therefore, the essential due process requirements for Father's contempt petitions have been satisfied, as those requirements apply to Father. Consequently, Father's first issue is without merit.

Father's second issue challenges the trial court's Final Custody Order, as it pertains to the release of the children's expired and unexpired passports to Mother, on the grounds that the Final Custody Order violates Father's due process rights. Father's Brief at 75-79. Specifically, Father argues that

Mother did not request possession of the passports in a motion or petition and the trial court directed that the passports be released to Mother without providing Father notice of this issue. *Id.*

Father's issue of whether a procedural due process violation occurred presents a question of law for which our standard of review is *de novo* and our scope of review if plenary. *S.T. v. R.W.*, 192 A.3d 1155, 1160 (Pa. Super. 2018).

> In custody hearings, parents have at stake fundamental rights: namely, the right to make decisions concerning the care, custody, and control of their child. *See Troxel v. Granville*, 530 U.S. 57, [] (2000); *see also* [U.S. CONST. amend. V and XIV]; [*see, generally*,] *D.P. v. G.J.P.*, [] 146 A.3d 204 ([Pa.] 2016).
>
> Due process must be afforded to parents to safeguard these constitutional rights. "Formal notice and an opportunity to be heard are fundamental components of due process when a person may be deprived in a legal proceeding of a liberty interest, such as physical freedom, or a parent's custody of [his or] her child." *J.M. v. K.W.*, 164 A.3d 1260, 1268 (Pa. Super. 2017) (*en banc*)[, ]quoting *Everett v. Parker*, 889 A.2d 578, 580 (Pa. Super. 2005)[.] It is well[-]settled that[,] "procedural due process requires, at its core, adequate notice, opportunity to be heard, and the chance to defend oneself before a fair and impartial tribunal having jurisdiction over the case." [*J.M.*, 164 A.3d at 1268] n.5[, ]citing *Everett*[,] 889 A.2d [at] 580[;] *see also Garr v. Peters*, 773 A.2d 183, 191 (Pa. Super. 2001). "Due process is flexible and calls for such procedural protections as the situation demands." *See, e.g.*, *In re Adoption of Dale A., II*, [] 683 A.2d 297, 300 ([Pa. Super.] 1996)[.]

*S.T.*, 192 A.3d at 1161 (emphasis omitted).

As discussed *supra*, one purpose of the custody hearings was to address Mother's October 28, 2019 petition for contempt. In this contempt petition, Mother asserted that Father failed to comply with the trial court order requiring

Mother and Father "to take all reasonable measure[s] to [e]nsure that their children's passports remain[ed] current and renewed within a reasonable time of expiration." *See* Trial Court Order, 6/27/17; *see also* Mother's Petition for Contempt, 10/28/19. The record reveals that Father received multiple notices regarding the scheduling of and purpose of the custody hearings, as noted *supra*. Father, therefore, received notice as required to protect his due process rights. Moreover, Father was notified prior to the start of the first custody hearing on December 6, 2019, that one of the outstanding issues to be resolved at the conclusion of the custody hearings was the concern regarding renewal of the children's passports. N.T., 12/6/19, at 4. By attending and participating in the custody hearings, Father received adequate notice. At the hearings, Father had ample opportunity to present argument, introduce evidence, and cross-examine Mother regarding the passports and who should retain possession of the documents. Having found that Father had notice of the trial court's intent to consider issues surrounding possession of the children's passports and that Father had an opportunity to be heard, we find Father's second issue to be without merit.

Moreover, the Child Custody Act defines "legal custody" as "[t]he right to make **major decisions** on behalf of the child, including, but not limited to, medical, religious[,] and educational decisions." 23 Pa.C.S.A. § 5322 (emphasis added). "When one parent has sole legal custody, that parent has final authority to make decisions, regardless of whether the other parent agrees or disagrees." ***M.P. v. M.P.***, 54 A.3d 950, 953-954 (Pa. Super. 2012).

It is axiomatic that, subject to specific orders issued by the trial court, international travel and the maintenance of related government travel documents constitute major decisions which fall within the purview of the parent who retains legal custody of the child. Therefore, we discern no error in the trial court's decision that Mother, as the parent with sole legal custody of the children, should receive possession of the children's passports, of which all but one was expired. The trial court, furthermore, protected Father's right to provide input concerning the children's international travel, by requiring Mother to first obtain either Father's permission, or a trial court order, before undertaking international travel with the children.

In his third issue, Father claims the trial court erred in applying Pennsylvania Rule of Civil Procedure 1915.4 and this Court's decision in **Dietrich, supra**. Father's Brief at 15-20. Specifically, Father contends that the trial court failed to schedule a custody trial on Mother's petition to modify custody within 180 days. **Id.**

Pennsylvania Rule of Civil Procedure 1915.4, in pertinent part, states,

### Rule 1915.4. Prompt Disposition of Custody Cases

. . .

**(b) Listing Trials Before the Court.** Depending upon the procedure in the judicial district, within 180 days of the filing of the complaint either the [trial] court shall automatically enter an order scheduling a trial before a judge or a party shall file a *praecipe*, motion or request for trial, except as otherwise provided in this subdivision. If it is not the practice of the [trial] court to automatically schedule trials and neither party files a *praecipe*, motion or request for trial within 180 days of filing of the pleading, the [trial] court shall, *sua sponte* or on motion of a party, dismiss

- 22 -

the matter unless a party has been granted an extension for good cause shown, or the [trial] court finds that dismissal is not in the best interests of the child. The extension shall not exceed 60 days beyond the 180[-]day limit. A further reasonable extension may be granted by the [trial] court upon agreement of the parties or when the [trial] court finds, on the record, compelling circumstances for a further reasonable extension. If an extension is granted and, thereafter, neither party files a *praecipe*, motion or request for trial within the time period allowed by the extension, the [trial] court shall, *sua sponte* or on the motion of a party, dismiss the matter unless the [trial] court finds that dismissal is not in the best interests of the child. A motion to dismiss, pursuant to this rule, shall be filed and served upon the opposing party. The opposing party shall have 20 days from the date of service to file an objection. If no objection is filed, the [trial] court shall dismiss the case. Prior to a *sua sponte* dismissal, the [trial] court shall notify the parties of an intent to dismiss the case unless an objection is filed within 20 days of the date of the notice.

**(c) Trial.** Trials before a judge shall commence within 90 days of the date the scheduling order is entered. Trials and hearings shall be scheduled to be heard on consecutive days whenever possible but, if not on consecutive days, then the trial or hearing shall be concluded not later than 45 days from commencement.

**(d) Prompt Decisions.** The [trial court's] decision shall be entered and filed within 15 days of the date upon which the trial is concluded unless, within that time, the [trial] court extends the date for such decision by order entered of record showing good cause for the extension. In no event shall an extension delay the entry of the [trial] court's decision more than 45 days after the conclusion of trial.

Pa.R.Civ.P. 1915.4(b)-(d).

The **Dietrich** Court, in discussing our Supreme Court's intent in enacting

Rule 1915.4, stated,

Rule 1915.4(b) provides two specific procedures for listing custody trials, either of which must occur within 180 days of the date the custody complaint was filed: (1) an automatic court order scheduling a trial before a judge; or (2) either party's filing a *praecipe*, motion[,] or request for trial. [Rule 1915.4] provides

for only one exception to the 180–day time limit, that is, a 60-day extension on a showing of good cause. If neither of the stated procedures is followed, and no extension is filed or granted, the [trial] court shall dismiss the matter.

*Dietrich*, 923 A.2d at 465 (citations and quotation marks omitted). The *Dietrich* Court further held, "the language of the rule dictates that dismissal must be automatic, thus making it unnecessary for a party to petition for dismissal." *Id.* The *Dietrich* Court recognized, however, that local rules of court may control or alter the timeframe in which a custody case must be brought to trial. *Id.* The Lehigh County Local Rules of Court do not set forth a time parameter in which a custody case must be brought to trial.[16] *See* Lehigh Ct. Civ.P.R. 1915.4, *available* at https://www.lccpa.org/family/LCCPA FamilyCourtRules.pdf (as of July 14, 2021).

Here, Father's challenge to the trial court's application of Rule 1915.4 presents a pure question of law for which our standard of review is *de novo*

_____

[16] Lehigh County Local Rule of Civil Procedure 1915.4, in pertinent part, states,

**Rule 1915.4 Prompt Disposition of Custody Cases. Attorney Appearance. Continuance.**

(a) Complaints for custody, petitions for modification, and petitions for contempt shall be scheduled for an office conference, except where agreements have been reached in mediation. Conferences shall proceed in accordance with Pa.R.C[iv].P. 1915.4-2(a) and Lehigh County Rule of Civil Procedure 1915.4-2(a) [(neither of which impose a time parameter in which the custody trial must be scheduled or commence)].

Lehigh Ct. Civ.P.R. 1915.4, *available* at https://www.lccpa.org/family/LCCPA FamilyCourtRules.pdf (as of July 14, 2021).

and our scope of review is plenary. ***Harrell v. Pecynski***, 11 A.3d 1000, 1003 (Pa. Super. 2011) (stating, "[t]he correctness of the trial court's application of a Rule of Civil Procedure raises a question of law . . . [and, as] with all questions of law, our standard of review if *de novo* and our scope of review is plenary"). As a guiding principle, procedural rules "shall be liberally construed to secure the just, speedy and inexpensive determination of every action or proceeding to which they are applicable." Pa.R.Civ.P. 126. Additionally, "It is axiomatic that in custody disputes, the fundamental issue is the best interest of the child." ***Harrell***, 11 A.3d at 1005.

In denying Father's motion to dismiss Mother's petition to modify custody for failure to schedule a custody hearing within 180 days, the trial court stated,

> In his motion, Father contends that the [trial] court should dismiss the July 10, 2018 petition for modification of a custody order filed by Mother because it was not timely resolved as required by [Rule] 1915.4.
>
> As explained in the memorandum opinion entered September 16, 2020, disposition of [Mother's] petition for modification [of the March 15, 2018 custody order] was delayed as a result of [Father's April 13, 2018] appeal to [this Court of the March 15, 2018 custody order.] The appellate record was not remitted back to [the trial court] until April 29, 2019. Despite [Father's] contention, there has been no violation of [Rule] 1915.4. The [trial] court timely issued a trial scheduling order for disposition of both [Mother's petition to modify custody and Father's petition to dismiss the same.] Due to the pendency of [Father's] appeal, the [trial court's action in the instant case] was stayed from April 13, 2018[,] until the case was remitted back to [the trial court] on April 29, 2019. Thus, only 120 countable days (from April 29, 2019[,] to August 27, 2019,) elapsed between filing the July 10, 2018 petition [to modify custody] and the August 27, 2019 trial

scheduling order, far less than the 180 days permitted by Rule 1915.4.

Trial Court Order, 9/16/20, at n.1. (extraneous capitalization omitted).

The record demonstrates that on April 13, 2018, Father filed two notices of appeal that collectively challenged numerous trial court orders, including a challenge to the March 15, 2018 custody order.[17]   While the appeal was pending, on July 10, 2018, Mother filed a petition to modify the March 15, 2018 custody order.  On August 24, 2018, the trial court, noting the pending appeal, stayed Mother's petition for modification pending further court order.[18]  Trial Court Order, 8/24/18.  On January 16, 2019, this Court affirmed the

_____

[17] Father's appeals were docketed by this Court at docket numbers 1204 EDA 2018 and 1205 EDA 2018.  In a May 18, 2018 *per curiam* order, this Court consolidated the appeals.

[18] Generally, after a notice of appeal is filed, the trial court is without jurisdiction to proceed further in the matter that is the subject of the appeal. Pa.R.A.P. 1701(a).   Pennsylvania Rule of Appellate Procedure 1701(c), however, permits the trial court to proceed with matters that are collateral to or separate from the particular issue, item, or claim involved in the appeal. Pa.R.A.P. 1701(c); **see also Sutliff v. Sutliff**, 489 A.2d 764, 779 (Pa. Super. 1985) (stating, Rule 1701(c) is "intended to prevent a pending appeal from affecting separate disputes between other parties or involving separate subject matter" (original quotation marks omitted)), *aff'd*, 528 A.2d 1318 (Pa. 1987).   Moreover, Rule 1701(b)(1) permits the trial court, *inter alia*, to preserve the *status quo* of the case pending appeal.

Because Father's appeal involved issues surrounding the March 15, 2018 custody order and Mother's petition requested the modification of the March 15, 2018 custody order, the trial court was without jurisdiction to address Mother's petition for modification while Father's appeal was pending. Pa.R.A.P. 1701(a) and (c).   The trial court was permitted, however, to maintain the *status quo* of the case by issuing a stay of Mother's petition for modification pending the outcome of Father's appeal.  Pa.R.A.P. 1701(b)(1).

March 15, 2018 custody order. *S.P.*, 2019 WL 210411, at 1. Our Supreme Court subsequently denied Father's petition for allowance of appeal on April 4, 2019, and his application for reconsideration on April 26, 2019. On May 2, 2019, the trial court notified Father of Mother's petition to modify the March 15, 2018 custody order and scheduled a conciliation conference on June 18, 2019. Notice and Order to Appear, 5/2/19. Upon recommendation of the custody hearing officer, the trial court ordered the instant case be placed on the custody trial list for disposition. Trial Court Order, 7/29/19. On August 27, 2019, the trial court ordered the custody hearing to commence on September 6, 2019. Trial Court Scheduling Order, 8/27/19. Upon a joint application for continuance, the custody hearing was continued until October 15, 2019. Trial Court Order, 9/4/19. On October 8, 2019, the trial court granted a joint application for continuance and rescheduled the custody hearing to commence on December 6, 2019. Trial Court Order, 10/8/19. The custody hearing commenced on December 6, 2019. On February 20, 2020, Father filed *pro se* a motion to dismiss the custody hearing on the ground that the custody hearing was not scheduled within 180 days of the complaint being filed. Father's Motion to Deny and Dismiss the Custody Trial, 2/20/20. The trial court subsequently denied Father's motion to dismiss the custody hearing, citing, *inter alia*, the closure of the statewide judicial system due to the COVID-19 global pandemic and the trial court's "good faith efforts to press these motions and petitions to closure." Trial Court Order, 4/7/20. On September 3, 2020, Father filed a motion to deny and dismiss Mother's

- 27 -

petition to modify custody arguing, again, that the trial court failed to schedule the custody trial within 180 days of Mother filing her petition for modification. Father's Motion to Deny and Dismiss [Mother's] Petition for Modification of Custody, 9/3/20. The trial court dismissed Father's motion on September 16, 2020.

The record demonstrates that the trial court complied with Rule 1915.4 when it ordered, on August 27, 2019, that the custody trial commence on September 6, 2019. The trial court was without jurisdiction to address Mother's petition to modify the March 15, 2018 custody order until Father's appeal of the March 15, 2018 custody order concluded, which occurred on April 26, 2019, when our Supreme Court denied Father's request for reconsideration of his petition for allowance of appeal. Between April 26, 2019, the date the trial court was first able to act, and the date the trial court scheduled the custody hearing, August 27, 2019, 123 days elapsed, which is far less than the 180 days permitted by Rule 1915.4. Therefore, Father's issue is without merit.[19]

---

[19] To the extent Father asserts that the trial court failed to comply with Rule 1915.4(c) by failing to commence the custody trial within 90 days of the scheduling order (August 27, 2019), a review of the two joint applications for continuance of the custody trial demonstrates that Mother and Father waived all applicable provisions of the Pennsylvania Rules of Civil Procedure governing the time standards for custody cases. *See* Application for Continuance, 9/4/19; *see also* Application for Continuance, 10/8/19. Therefore, any such assertion is without merit.

In his fourth issue, Father asserts that the trial court erred, as a matter of law, and abused its discretion when it granted Mother's May 2, 2019 petition for contempt and, as "punishment," modified the March 15, 2018 custody order to the detriment of Father.[20]  Father's Brief at 21.  Father contends that, as "punishment," the trial court "stripped him of all legal and physical custodial rights[.]"  *Id.* at 20.

To reiterate, we review a grant of a petition of contempt in a custody case to determine if the trial court abused its discretion.  ***Chrysczanavicz***, 796 A.2d at 368.

Here, in her petition for contempt, Mother represented that Father violated the March 15, 2018 custody order by "not visit[ing] with the children since Oct[ober] 2018."  Mother's Petition for Contempt, 5/2/19, at ¶¶ 4-5.  The March 15, 2018 custody order required Father, *inter alia*, to "exercise partial physical custody of the children on alternating weekends from 6:00 [p.m.] Friday until 6:00 [p.m.] Sunday."  Trial Court Order, 3/15/18, at §2.  In granting Mother's petition for contempt, the trial court found that from April 2018, to September 2018, Father exercised only 40% of his custodial time with the children and there were repeated instances of Father limiting his custodial time or cancelling his time altogether.  Trial Court Opinion, 9/16/20,

---

[20] We find no merit to Father's assertion that he was deprived of notice of a hearing on Mother's petition for contempt and, further, was deprived of an opportunity to be heard on such matter.  As discussed *supra*, Father was apprised that Mother's petition for contempt was one of several matters to be addressed as part of the custody hearings.

at 10-11. The trial court further found that from September 2018, to May 2019, Father did not exercise his right to any custodial time with the children. *Id.* at 11.

Contrary to Father's assertion, the trial court did not modify the March 15, 2018 custody order as "punishment" for finding Father in contempt of said custody order.[21] Rather, the trial court granted Mother's request to modify the custody order based upon consideration of the factors set forth in 23 Pa.C.S.A. §5328(a)[22] and upon its consideration and determination of the best

_____

[21] The trial court's basis for granting Mother's petition for modification of the March 15, 2018 custody order is set forth in its opinion in support of the Final Custody Order and has been reproduced *infra*. **See** Trial Court Opinion, 9/16/20, at 14-17.

[22] Section 5328 of the Domestic Relations Code states,

In ordering any form of custody, the [trial] court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following: (1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party[;] (2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child[;] (2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services)[;] (3) The parental duties performed by each party on behalf of the child[;] (4) The need for stability and continuity in the child's education, family life[,] and community life[;] (5) The availability of extended family[;] (6) The child's sibling relationships[;] (7) The well-reasoned preference of the child, based on the child's maturity and judgment[;] (8) The attempts of a parent to turn the

- 30 -

interests of the children. The trial court granted Mother's petition for contempt because Father failed to exercise his physical custody according to the requirements of the March 15, 2018 custody order. While Father's failure to exercise his custodial visits was one factor the trial court considered in modifying the custody order, it was not the sole factor considered. In comparison, Father's failure to exercise his custodial visits in accordance with the March 15, 2018 custody order was the factor the trial court most considered in holding Father in contempt. As such, we find Father's issue to be without merit.

---

child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm[;] (9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs[;] (10) Which party is more likely to attend to the daily physical, emotional, developmental, educational[,] and special needs of the child[;] (11) The proximity of the residences of the parties[;] (12) Each party's availability to care for the child or ability to make appropriate child-care arrangements[;] (13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party[;] (14) The history of drug or alcohol abuse of a party or member of a party's household[;] (15) The mental and physical condition of a party or member of a party's household[;] (16) Any other relevant factor.

23 Pa.C.S.A. § 5328(a) (paragraph formatting omitted).

In his fifth issue, Father argues that the trial court violated his due process rights by failing to give him 15-days' notice of the children's interviews by the trial court *via* advanced communication technology. Father's Brief at 27. In his sixth issue, Father further asserts that the trial court violated Pennsylvania Rule of Civil Procedure 1915.11(b) by conducting the children's interviews *via* advanced communication technology and not in open court or in judicial chambers. *Id.* at 33-34.

As discussed *supra*, due process, while requiring adequate notice, an opportunity to be heard, and the chance to defend oneself, must remain flexible in how its protections are afforded based upon the circumstances of the individual situation. *S.T.*, 192 A.3d at 1161.

> Pennsylvania Rule of Civil Procedure 1915.11(b) states,
>
> The [trial] court may interview a child, whether or not the child is the subject of the action, in open court or in chambers. The interview shall be conducted in the presence of the attorneys and, if permitted by the court, the parties. The attorneys shall have the right to interview the child under the supervision of the [trial] court. The interview shall be part of the record.

Pa.R.Civ.P. 1915.11(b).

Here, the record demonstrates that the trial court scheduled the in-camera interviews of the children for August 25, 2020, and instructed Father and Mother to submit a list of suggested questions and topics for the interviews by August 20, 2020. Trial Court Order, 7/31/20. Notice was mailed to both parties. *Id.* At this time, neither Mother nor Father were represented by counsel. On August 14, 2020, Father filed objections to the children's

in-camera interviews citing a July 2017 agreement between both parties "not to introduce [the] children in the court." Father's Response and Objections to the Order Dated July 31, 2020 for the Children['s] In-Camera Interview[s], 8/14/20. That same day, Mother filed a request to change the interviews from in-person to virtual due to concerns for the COVID-19 global pandemic. Mother's Petition In Request to Change the Children['s] Interview[s] from In[-]Person to Virtual Mode due to Pandemic Situation, 8/14/20. On August 19, 2020, Father filed objections to Mother's request to change the interview method. Father's Response and Objections to [Mother's] Petition, 8/19/20. On August 25, 2020, the trial court scheduled argument on the various objections and requests related to the children's interviews for August 27, 2020.[23] Trial Court Order, 8/25/20. Notice was mailed to both parties. *Id.*

On August 27, 2020, the trial court conducted a hearing concerning the children's interviews at which only Mother appeared. N.T., 8/27/20, at 2-7. The trial court noted that,

> The parties were notified by the Family Court Office [of Lehigh County, Pennsylvania] by telephone on August 25, 2020, that argument was scheduled for August 27, 2020[,] at 2:00 [p.m.], and again the parties were notified by [electronic mail] on August 25, 2020, with a copy of the argument scheduling order. Finally, on August 26, 2020, [the trial] court's chambers sent the parties an invitation[, *via* electronic mail,] to an advanced communication technology argument.

---

[23] The trial court order scheduling argument on the objections and requests concerning the children's interviews is dated July 25, 2020. This date appears to be a clerical error, and we deem the order filed August 25, 2020.

Trial Court Order, 8/27/20, at n.1. At the conclusion of the hearing, the trial court scheduled the children's interviews for September 1, 2020, and provided both Father and Mother the access information for participating in the interview process conducted *via* advanced communication technology. ***Id.*** at 2. Notice was mailed to both parties. A review of the notes of testimony demonstrates that only Mother submitted questions and topics in advance of the children's interviews. N.T., 9/1/20, at 40. While Mother participated briefly at the start of the advanced communication technology interviews in order to facilitate the process, neither she, nor Father, who did not connect to the advanced communication technology application using the password and log-in information previously provided, participated in or were able to view the interviews as they occurred. ***Id.*** at 3, 39.

Father was provided notice of the children's interviews pursuant to the July 31, 2020 scheduling order, as further demonstrated by his subsequent objections. The trial court further stated that both Mother and Father were provided notice of the August 27, 2020 argument concerning Father's objections to the interviews and Mother's request to change the method by which the interviews were conducted. Trial Court Order, 8/27/20, at 1 n.1. Notice was also provided, along with access information, to both Father and Mother concerning the September 1, 2020 interviews of the children.[24] ***Id.*** at

---

[24] In scheduling the children's interviews, the trial court stated,

2.    Moreover, Father was instructed to submit questions and topics for discussion in advance of the children's interviews.[25]  Based upon the record before us, we discern no violation of Father's due process rights with regard to notice of the children's interviews and the ability to participate by advance submission of questions and topics to be discussed.  Therefore, Father's fifth issue is without merit.[26]

Regarding Father's argument that the trial court violated Rule 1915.11 by conducting the children's interviews *via* advanced communication technology and not in open court or in chambers, we find this argument to be without merit.  A trial court has broad discretion in its decision to interview a child involved in a custody action.  Pa.R.Civ.P. 1915.11.  In deciding whether, or how, to interview a child involved in a custody action, the trial court must remain mindful that "[t]he experience may be traumatic and disruptive" to the

_____

> I've agreed with the parents and have said no, no, no, I won't interview the children.  But now they are of a more mature age and my concern is that there's been some damage in the relationship with [Father], and I wanted to hear from them about that.

N.T., 8/27/20, at 3.

[25] Given the contentious relationship and prior history between Mother and Father concerning custody of the children, it is axiomatic, and reasonable, that the trial court did not permit either party to participate in the interviews.  **See** Rule 1915.11.

[26] To the extent that Father's due process claim, within the context of this issue, includes a challenge to notice of possession of the children's passports, this issue has been addressed *supra*.

child and that the best interest of the child must be prioritized. ***T.D. v. E.D.***, 194 A.3d 1119, 1126 (Pa. Super. 2018) (stating that, "The stress and emotion involved in coming to court to testify, even for an adult, particularly about situations involving children and their parents, could have an adverse effect on a child. Placing a child in a position of feeling like he or she has to choose or opine on even a discrete custody matter could aggravate relationships to the detriment of the child's best interest. The presence of a child in court is not always necessary or desirable." (original quotation marks and brackets omitted)). A trial court has discretion in conducting a child's interview, such as making the interview setting less formal or not wearing a judicial robe, to alleviate or minimize the "traumatic and disruptive" nature of the interview. ***E.C.S. v. M.C.S.***, ___ A.3d ___, 2021 WL 2177479, at *8 (Pa. Super. Filed May 28, 2021) (slip opinion).

A review of the record demonstrates that the salient procedural requirement, under the circumstances of the instance case, has been satisfied in that the children's interviews were transcribed in order to assure that a complete record was established for purpose of appeal. ***Gerald G. v. Theresa G.***, 426 A.2d 157, 161 (Pa. Super. 1981).[27] We find no abuse of discretion in

---

[27] To the extent that Rule 1915.11 procedurally requires that counsel be present and have the opportunity to question the children, these requirements are moot given that both Father and Mother were acting on their own behalf as *pro se* litigants and the presence of the parents at the interview falls within the discretion of the trial court. Pa.R.Civ.P. 1915.11. Moreover, the trial court provided both Mother and Father the opportunity to submit specific questions and topics of concern prior to the interview.

the trial court conducting the children's interviews *via* advanced communication technology, especially in light of the COVID-19 global pandemic. Consequently, Father's sixth issue is without merit.

In his seventh issue, Father challenged the trial court's order granting Mother sole legal custody and primary physical custody of the children on the grounds that "no evidence or testimony was presented on any of the factors listed in 23 Pa.C.S.A. § 5328(a), and none of these factors were directly addressed by the trial court and [the trial court] failed to consider the best interest of the children." Father's Brief at 34.

> In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the [trial court that] viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.
>
> With any child custody case, the paramount concern is the best interests of the child. This standard requires a case-by-case assessment of all the factors that may legitimately affect the physical, intellectual, moral[,] and spiritual well-being of the child.

**M.J.M. v. M.L.G.**, 63 A.3d 331, 334 (Pa. Super. 2013), *appeal denied*, 68 A.3d 909 (Pa. 2013).

Section 5323(d) of the Custody Act mandates that a trial court must articulate the reasons for its decision in awarding custody prior to the filing of

a notice of appeal. 23 Pa.C.S.A. § 5323(d) (stating, "[t]he [trial] court shall delineate the reasons for its decision on the record in open court or in a written opinion or order"). Moreover, Section 5328(a) of the Custody Act sets forth explicit factors the trial court must consider when reaching its decision. 23 Pa.C.S.A. § 5328(a).[28]

Here, Father argues that, "the trial court failed to recognize that Mother has a pattern of failure to comply with the custody order multiple times, [breached] the custody agreement, and made irreparable injury to Father and the children's welfare[.]" Father's Brief at 35 (emphasis and extraneous capitalization omitted). In sum, Father asserts that Mother's failure to comply with the March 15, 2018 custody order, of which Father cites 16 specific instances, demonstrates that both parents are comparable when considering the factors enumerated in Section 5328(a). *Id.* at 43-44.

In so arguing, Father asks this Court to reweigh the trial court's factual findings and determinations in favor of Father's assertion that both "[p]arents are fit, capable of making reasonable child rearing decisions, and willing and [] able to provide love and care for their [c]hildren [and] evidence a continuing desire for active involvement in the [children's lives.]" *Id.* at 43. This Court's role, however, "does not include making independent factual determinations"

---

[28] *See* supra, footnote 23 for the Section 5328(a) factors to be considered by the trial court.

and we defer to the trial court on issues of credibility and weight of the evidence. **M.J.M.**, 63 A.3d at 337.

A review of the record demonstrates that the trial court, as demonstrated by its footnote references to the individual factors enumerated in Section 5328(a), articulated the reasons for its decision in its written opinion accompanying the Final Custody Order. Moreover, the record supports the trial court's factual findings and consideration of the Section 5328(a) factors, and we will not reweigh the evidence in favor of Father's request for joint legal and physical custody. Consequently, Father's seventh issue is without merit.

Father's eighth issue challenges the trial court's July 9, 2020 order denying his motion for recusal of the trial judge presiding over the on-going custody proceeding.[29]

Our scope and standard of review of an order disposing of a motion for recusal is well-settled.

> We review a trial court's decision to deny a motion to recuse for an abuse of discretion. Indeed, our review of a trial court's denial of a motion to recuse is exceptionally deferential. We extend extreme deference to a trial court's decision not to recuse. We recognize that our trial judges are honorable, fair[,] and competent, and[,] although we employ an abuse of discretion

---

[29] At the time Father filed his motion for recusal, the trial court had not yet concluded the custody hearing. An order disposing of a motion to recuse does not become a final, appealable order until the underlying action has been decided. **Interest of D.R.**, 216 A.3d 286, 291 n.4 (Pa. Super. 2019), *aff'd*, 232 A.3d 547 (Pa. 2020). Here, Father filed his motion to recuse the trial judge during the on-going custody proceeding. Therefore, the order denying Father's motion to recuse did not become a final, appealable order until the trial court issued the Final Custody Order.

standard, we do so recognizing that the judge himself[, or herself,] is best qualified to gauge his[, or her,] ability to preside impartially. Hence, a trial judge should grant the motion to recuse only if a doubt exists as to his or her ability to preside impartially or if impartiality can be reasonably questioned.

*D.R.*, 216 A.3d at 292 (citation omitted). "[A] party seeking recusal bears the burden of producing evidence to establish bias, prejudice, or unfairness which raises a substantial doubt as to the jurist's ability to preside impartially." *Hvizdak v. Linn*, 190 A.3d 1213, 1223 (Pa. Super. 2018) (citation and original quotation marks omitted), *appeal denied*, 204 A.3d 364 (Pa. 2019).

Here, Father contends that the trial judge assigned to the custody proceeding should have recused herself because she acted in violation of the law, was partial and biased against Father, abused her discretion, and allowed Mother to "misuse/manipulate the various 'systems' from which she desired to receive benefits in all forms, [] including court orders, residency, income, aid, support and dissipating marital assets in favor of her, and having caused irreparable injury to Father and the children's welfare." Father's Brief at 45. In so arguing, Father fails to produce evidence establishing bias, prejudice, or unfairness on the part of the trial judge that would raise a substantial doubt as to the jurist's ability to preside impartially. Father simply disagrees with, and is dissatisfied with, the outcome of the custody proceeding, and the disposition of his various motions. Therefore, Father's issue is without merit.[30]

_____

[30] To the extent Father's motion for recusal asserts delay of the custody proceeding as the ground for the trial judge's recusal, we concur with the trial

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/20/2021

---

court that Father "has clearly been responsible for much of the delay" in bringing this matter to closure. Trial Court Order, 7/7/20, at n.1.